noon. The first argued case this morning is Russell against McDonald, number 147055, Mr. Belzner. Good afternoon, Your Honor. David Belzner for the appellant, Anthony Russell, and may it please the Court. And I think I've reserved three minutes for rebuttal, but just to make sure, make sure that's okay. It's axiomatic that before one can comply with the law, one has to know what the law is. This case presents the question of what law and justice require if we are in a claim system that is supposedly accessible, even friendly to the development of a claim by laypeople, usually unrepresented at the initial stages. A regulatory requirement upon which benefits depend is obscure, unclear in its meaning, and the agency that promulgated it declines to explain what it means to assist the veteran in getting the evidence that would establish, substantiate his claim. The appellant has argued that this is improper, both under the notice statute 5103A, because the failure to give the notice to the veteran about what he needs to submit to support his claim is contrary to the intent of Congress that claimants know that before they present their claims for adjudication. We also say it's contrary to fundamental notions of fairness and due process. The first that Mr. Russell learned of what seems to be the rule of law, at least as articulated by the single judge of the Veterans Court, is when he got that decision. The board wouldn't tell him, the VA didn't tell him, no rating decision or statement of the case told him what was required to establish exceptional repugnance, which was the peculiar rating criteria that's at issue here. As Mr. Russell applied for an increase from the 30% rating for his skin condition to the 50% rating. At that point, this criteria, exceptional repugnance, comes into play. You're familiar with our Wilson case? Yes, Your Honor. Doesn't Wilson say that once the initial claim is made at the RO level and the RO and the petitioner work it out, that the VA has no further obligation to be helpful at all? Isn't that what Wilson says? Wilson said that in the context of a claim where, that was a service connection claim, where there was no quarrel about whether that initial notice had ever been given. It had been. There was no dispute that it was given and it was adequate. The question in that case was, does the VA then have to later come along and give further explanation after weighing the veteran's evidence and assessing it and presumably finding it wanting? Does the VA then have to get back to the veteran and say, oh, this is what we need now to satisfy us? This case is a quite different matter. At issue in Wilson, there was not a question of what the regulation meant. The elements of the claim were quite clear. It was a service connection claim. The question there was, how do you like our evidence, essentially, is what the veteran was saying to the VA. And the court said there's no duty of the VA to go back and pre-adjudicate the claim and then give further explanation. Our contention here is that the initial notice was never adequate. It was never given. So it is a quarrel about 5103A because even though the issue arose much later, and practically speaking it wouldn't have been given early on because the original service connection claim was in 1999. It wasn't until around 2002 that the issue of increased ratings came up. And this issue really doesn't come up until 2005 or after when he's moving from one rating to another. And this criterion now comes into play. Do you agree with the ruling in the Baczynski case, which is a Veterans Administration, Veterans Court case, that the meaning of exceptionally repugnant is a subjective requirement or a subjective concept that requires lay reaction to an otherwise disgusting looking case? I suppose that's what exceptionally, you'd have to find some people on the street who thought you were exceptionally repugnant. Do you agree that that is the proper interpretation of the requirement? Well, I have no reason to second guess the Veterans Court on that. There's nothing else to look at. I mean, we have the language from the agency, exceptionally repugnant. There really isn't any other guidance. There's no guidance in the Federal Register as to what they intended when they enacted that. So I certainly think the court seems to have the right idea from the wording. You're not challenging their interpretation? No, sir, not in that respect. As far as I know, that's what we know about the exceptionally repugnant requirement is that it's a subjective evidence on the way people react to the condition. When they see it, and we know that it's not a medical determination because it's not a medical term of art. So those are the two things we really know from case law. Well, we knew that as of 2011, didn't we, if that's what we accept to be the rule. Yes, sir. In 2012, July of 2012, you were before the board on your last round with the board. So you had a year's notice, presumably, or at least some substantial notice that that's what the VA required you to show that there was lay opinion that your client was exceptionally repugnant. But you put in no evidence. You didn't even attempt to put in depositions. You didn't interview people on the street. You didn't respond to the Brzezinski standard. What are we supposed to do? Well, Mr. Russell thought he did respond to the Brzezinski standard because he submitted evidence that he was made fun of at work, that his co-workers made fun of him, so much so that he stayed home to avoid the possibility of that harassment. We don't know from the co-workers whether that's true, do we? Well, I think we can accept it was never argued or disproved that what he was saying was true, that is, that they did make fun of him. We don't know why they made fun of him precisely. That's true. And the only other piece of evidence that you put in was his wife said that he preferred to stay home because they made fun of him. Correct. Neither of those go to the Brzezinski standard, do they? Well, we submit that they do. And I've argued in the brief that if somebody is making fun of you, there's certainly a good possibility that the reason they're doing it is because there's something about your appearance that is offensive or at least off-putting. So you did submit relevant evidence to the standard. The board rejected it and found it insufficient. And now you're here arguing that you didn't know what to do, but that sounds an awful lot like the arguments we rejected in Wilson, which was the VA is not obligated to tell you what evidence you need to prove your claim. It's obligated to tell you what types of evidence can be used to prove your claim. And didn't they do that here? They gave you at least several different points about what kinds of evidence, like co-worker statements and things like that. And that's the kind of evidence that Wilson – or the kind of notice that Wilson requires, isn't it? Well, the VA gave notice very generically in 2008 that he was permitted to gather evidence from family members, co-workers, those who would have observed the condition and how it affected his ability to work. That said, nothing, of course, about how they were reacting to his condition. Except that what Wilson requires, though, what types of evidence, not the kind of qualitative type of evidence, but the generic types of evidence. Well, but, Your Honor, if the standard requires that there be a subjective reaction to the skin condition when observed, then telling somebody you need to submit statements from co-workers about how it affects your ability to work does not go to that. It doesn't put you on fair notice that that's what you need to submit. It seems to me that that's exactly what the Board did in 2008. And it said something like, on a long time, you can substantiate your claims by employment records, statements from the employer, co-worker, blah, blah, blah, who have observed the effects of this tinea versicolor on his ability to operate successfully at work. It specifically references others' observances of this. So that seems to be exactly what you're required to do. Well, but if just taking that notice on its face, if I went to a co-worker, I would ask him, do you have any observations about how my disability affects me in the workplace? I wouldn't ask him, how does my skin condition strike you? Does it really repel you? Does it make you turn away? Do you, you know, and that's what the Veterans Court is now saying is required. There's an argument that this particular language is insufficient in this case to fulfill the requirements of 5103. The language in the notice is from VA? Yeah. Yes, Your Honor. We contend that's inadequate. Because it couldn't possibly have signaled what was required, really. Whether specific notice meets the requirements of 5103 is a factual conclusion or, at best, an application of law of fact, isn't it? And we don't have jurisdiction over that. Right. You don't have jurisdiction over factual findings, obviously. We contend that, excuse me, Your Honor. So whether something specifically complies with 5103 is an application of law of fact. You have to convince us that the Veterans Court has misinterpreted 5103 somehow in finding. Well, the Veterans Court said there's no duty in this instance to give notice of what's required under the statute. And our submission is that the language of the regulation is so unclear about what you would have to provide in order to satisfy it. I don't see where the Veterans Court has said they don't have any duty to give notice in this situation. They don't have a duty to give the kind of notice you think they were supposed to give. But that's an application of 5103. Well, it is a… Can I just… I want to be clear about this. The Veterans Court did not say the VA does not have to give your client notice about what types of evidence he has to submit to support his claim. Well, we contend that it did, in effect, because it said you don't have to give any notice after the initial notice is given in the claim, which in this instance would have been around at the very latest, 2008, when the increased rating issue came up. And our contention is that notice was inadequate, so they never gave adequate notice. Well, but that's what I'm getting at. If your contention is the specific notice in the specific case is inadequate, that seems to me to be a factual issue that we can't review. It's something that's within the province of the Veterans Court to review, and they ruled against you. Well, I think it comes down to what notice means in the context of this regulation. If telling somebody that you can get a coworker statement about how your disability affects you in the workplace, you know, actually puts the veteran on notice as to the evidence he needs to submit, well, then there would be no duty to give further notice. But our contention is that clearly was not enough, and he asked… Let me interrupt. You're really trying to put this in a due process context, but I assume with the notice aspect. But what seems to be so troubling, all that we have is a letter from his wife. So you say in his brief that he worked in a prison. If that was one reason why he didn't have letters or whatever from his coworkers saying he looks awful, I'm disgusted, or whatever it might be. But I didn't see any exculpatory statement as to why, over all of these years of litigation, of attempting to meet some kind… Well, some minimal standard we know is met. We want to enlarge the minimal standard as to some proffer of additional information other than, tell me exactly what you want, because these are generalized terms, which one finds in diagnostic treatment throughout. And to me, this is extraordinarily troublesome that you've been arguing. You don't tell us how to define this word, so we're not going to try and define it either. If the words weren't used in declarations of coworkers, there were none. There must be some minimal obligation which would bring this into the point of arguing about whether due process was met, which I think is the only issue that can be appropriately raised here. Well, our contention is that once this issue arose, we submitted him as the evidence of the coworkers making fun of him. From his wife. Well, and from him. He also made a statement directly that people make fun of me when I go to work. So both of them, the wife did and he did as well. She talks about him staying home because of the fear of harassment. He talks actually about them actually making fun of him at work. So we had at least that much. And it was submitted with the comment that this seems to be evidence of the sort that you're looking for now that we have Paczynski. That is, it's the subjective reaction of other people to your condition. They saw it and they made fun of him. He must have known he was getting advice that perhaps he should somehow try and supplement that since he'd lost on that evidence. Well, he hadn't lost on that evidence. That issue came up in the remand in 2011 and then it was supposed to be expressly addressed. And he hadn't actually lost on that until the board denied him in this case and then the veterans court affirmed. Well, all right. We'll save here for the time. Let's hear from the other side. Mr. Canizares. Good afternoon and may it please the court. Mr. Russell's contentions really go to the application of law in fact, which would be on this court's jurisdiction. Well, maybe it is unless he has a due process issue. Your Honor. Because I asked you, you've got these strange words in the regulation. Explain them to me. What do I have to do? If he gets a stone wall in response to that, that's not application of law in fact. Well, Your Honor, first of all, with respect to the due process argument, it is essentially the same argument that he makes with regard to the section 5103A argument, which is that he was unaware of what the meaning of this regulation was and that that deprived him of due process rights. Merely labeling it as due process is insufficient to confer jurisdiction over this court's judgment. He didn't label it that way. I did. I'm really trying to draw the distinction between the areas in which we have no jurisdiction, which may be where we are, and whether in fact there is some fundamental issue that we can add some clarification to. Right. Well, with regard to the due process argument, his contention again is that he was not told that he asked for information about the meaning of this regulation and that he was unaware of it. The Baczynski decision, which set out the standard for exceptional repugnance, was known to Mr. Russell. In addition to that, there were two letters that the Veterans Court identified as giving him notice of the types of evidence that he needed to provide that go to the question of whether his condition was exceptionally repugnant. What if we didn't believe the Baczynski decision was correct? That is to say, there's nothing in DC Diagnostic Code 7806, or in any of the diagnostic code material, that spells out the meaning of exceptionally repugnant. One alternative interpretation of exceptionally repugnant is that it's an objective standard that ought to be looked at by the VA, board, or whoever, or the court, in terms of the total record before the board or the court. It's not a subjective standard that you need to go find lay people on the street who will throw up conveniently, but rather it's an objective medical standard that should be determined on the basis of the whole record. How about if we viewed the case that way? Wouldn't that be a challenge to the basic interpretation of the DC 7806, which is certainly within our jurisdiction? Well, Your Honor, that would be a different way of construing the term exceptionally repugnant. But the construction that Mr. Russell says the Veterans Court adopted, the one that he seeks this court to review, is the ruling of law that he argues the Veterans Court adopted, is the rule that exceptional repugnance can, under no circumstance, be demonstrated by harassment or ridicule. But that is not what the Veterans Court found. For this court to confer, have jurisdiction to review that decision, it would need to be an interpretation of the regulation that the Veterans Court actually adopted. But it didn't. Well, what was the interpretation of the regulation that the Veterans Court adopted in this case? How did they understand the phrase exceptionally repugnant? It was consistent with the Veterans Court's decision in Viksinski, Your Honor. Meaning it's a subjective standard? A subjective standard. But perhaps that's wrong. Perhaps it's not a subjective standard. And, in fact, I thought it was in your brief, but in one of the materials, it was pointed out that a proposal was put before Congress to have language in that particular area that would essentially adopt a subjective standard, and Congress didn't do it. Isn't that, do I have that correct? I'm not sure if Your Honor is referring to the regulation that was addressed in the Viksinski decision itself. Which, in that context, the court was examining what the meaning was of exceptional repugnance. I guess it was Viksinski that I read that gave me that information. So Viksinski is basically before us in the sense that the Veterans Court adopted the reading that Viksinski gave, which has never been challenged before, but comes under challenge in this case. Because if the Veterans Court and Viksinski are wrong, then we need to interpret that provision perhaps as an objective standard. Could we do that? Well, Your Honor, with regard to the jurisdictional question, our view is that this is Mr. Russell's challenge to the application of a lot of facts. That essentially his grievance is that the board and the Veterans Court got the wrong result. And the language that he's focused on with respect to exceptional repugnance is an analysis of whether the board committed a clear error. The Veterans Court analyzed the fact that the board did make a mistake in attributing a notation to a medical examiner in a medical examination, but that even without that statement, Mr. Russell fails to demonstrate that his skin condition is exceptionally repugnant. And that interpretation was the application of a lot of fact. That is the interpretation that Mr. Russell has seized upon as evidence of some new rule of law. No, his objection is that he asked for such an interpretation objectively, and he was refused it. There was nothing to apply. There was no law to apply the fact. It's different, isn't it? Well, Your Honor, from the perspective of Section 5103A, whether or not it is a statutory obligation to provide notice of any information or evidence that's necessary to substantiate the claim, it does not require that it is not triggered by a veteran requesting information. And the court recognized in Wilson, in that case, as here, Mr. Wilson waited until late in the proceedings to say, please tell me what evidence I need to meet my claim. And the court stated clearly in its opinion that the request itself is of no moment because it is a statutory application and it attaches only at the initial stage of the process. It is a pre-adjudicatory notice. Well, we can't take Wilson that broadly because it's clear that the, I assume you agree, that the VA has a duty to assist that goes far beyond the initial duty to help get the complaint or the claim correct, don't you? You're familiar with our Nova decision in which we struck down the VA's effort to relieve the Board of Appeals from any duty to assist veterans, and that's well along in the process. Clearly, the VA has a duty to assist the veteran to get the claim, get the remedy that the veteran is asking for, even if the veteran doesn't know quite how to do it, and that runs all through the system. You agree to that, don't you? Yes, Your Honor. So to the extent Wilson seems to say something, or Wilson could be read as saying it ends when you get the initial claim perfected on paper, that clearly can't be the case. So I come back to you on the question of what could exceptionally repugnant possibly mean to an applicant. Isn't that perhaps it's fatally indefinite and the rule is invalid? That's a possibility too, isn't it? Well, Your Honor, with respect to the duty to assist, that is relevant insofar as it goes to the due process question as well, in that there were numerous other protections that safeguarded the process and protected the veteran that were adhered to in this process beyond the 5103 notice at the outset. And as Wilson has noted, there are other protections, the duty to provide notice of a decision, et cetera, that mitigate any sort of due process type of problem. And in addition to that, with regard to the duty to assist, that is not an argument that has been made before this Court. The appellant's argument is very specifically focused on Section 5103A. So it is really not a question before this Court to address. With respect to the issue of what is the meaning of exceptionally repugnant, I would point out that this provision was amended, that the VA amended it in 2002. It changed it to a criteria that is a more objective analysis related to the percentage of one's body that is affected. And that really goes to demonstrate that to the extent that there was a problem, it was corrected through an appropriate means of amending the regulation. Or it demonstrates that that's what they always intended. They just used not such good language. It may, but certainly to the extent that what the record shows and what the Veterans Court considered was... So there are two different versions of this diagnostic coded issue. Yes, Your Honor. Is there any dispute about which one is more generous? No, there is no dispute, Your Honor. And the one that's more generous is the one that we're talking about, that contains the especially repugnant language? Well, Your Honor, even that is not a point of necessarily common ground between the parties that hasn't been addressed. Well, I'm just asking because I think it's the rule, isn't it, that when there's two different versions of a regulation, generally the more generous one is the one that is used by the Veterans Court. It doesn't seem that that's been an issue here. And since it switched from a subjective one that seemed a little bit looser to a more objective one that, although I don't remember the details, I don't think he would qualify under, I assume that the previous one is the more generous one. Your Honor, the board applied both and found that he was ineligible under both. The board analyzed the more recent criteria, found he was ineligible. The appeals that have now gotten to this stage have been with respect to the older criteria, and there has not been any dispute between the parties as to which is more favorable. To the question of Wilson, this decision in Wilson is directly on point here because Section 5103A requires a disclosure of any information and evidence that would be necessary to substantiate the claim. What Wilson said was that is generic notice. That is, it needs to identify the types of information and evidence that would be necessary. And that is, it does not need to be veteran-specific. The paralyzed veterans case before that similarly made that proposition. And more recently, in 2009, in the Vasquez-Flores decision, this court made clear that the duty to notify under 5103A is generic with respect to the type of claim that we have here, which is a claim for an increased disability rating. He mentioned that the Wilson case involved a claim for a service connection. Well, Vasquez-Flores applied it directly in this context. And Vasquez-Flores also noted that it was unnecessary to provide notice of the disability rating criteria and cross-reference other criteria and make other sorts of specific representations or information as to what would be necessary to substantiate the claim. The court said very clearly generic notice does not require that. Mr. Russell's rule is incompatible with this case law, and his proposed construction would essentially require the VA at the outset of the claims proceedings to not only identify what ratings criteria may or may not apply, but also make some sort of assessment as to what language may or may not be ambiguous and then try to explain that information to the veteran. It is not only an unworkable standard, but certainly at odds with what the case law requires. Even if the court considers Mr. Russell's argument regarding the meaning of the term exceptionally repugnant, it should affirm the Veterans Court's decision. The board found that Mr. Russell had not met the standard as exceptionally repugnant because although he had submitted the statement that his co-workers made fun of the look of his skin, it found that that was not the equivalent of exceptional repugnance. And what the court did was examine that finding of fact or clear error. It noted that there had been a mistake made by the board in attributing a statement to the medical examiner, but that, quote, even without that statement, Mr. Russell had not demonstrated that his skin condition was exceptionally repugnant. All of that is application of law to fact and not before the court, but it's also sound. Did I misread the court? Weren't they doing that analysis in terms of seeing exceptionally repugnant as a subjective requirement? That is, he had to submit evidence that lay people, to use the language of the Baczynski case, lay people would find his condition exceptionally repugnant. It wouldn't be enough if the court itself thought it was exceptionally repugnant because they didn't see the condition themselves. You'd have to bring in evidence of lay people's reaction to the conditions. Isn't that what the court was concerned about? Isn't that when they said, or the board, I guess, and the court said, he didn't bring in any evidence on that issue, which is true. He didn't bring in any evidence. Isn't that where we are? Yes, Your Honor, and so far as the Veterans Court, its analysis of the question of exceptional repugnance was consistent with the Baczynski decision. So if Baczynski is wrong, then the court was wrong. Well, Your Honor, I... That's a simple question. You can answer it yes or no. I hesitate to answer that yes or no, but I would say yes, insofar as the Baczynski case has a similar standard. Has anyone ever argued that Baczynski was wrong, either here or below? I'm not aware of any argument, Your Honor, on that. But just to reemphasize the jurisdictional point that came up earlier, the adequacy of whether VA has provided adequate notice under Section 5103A, which really goes to these questions. That is a factual question, and this court's case in Garrison and Mayfield make that very, very plain that whether... We know the factual questions. We've done our best to avoid them. Okay? Thank you, Mr. Cannizzaro. Thank you. Very quickly, Your Honors. The Wilson... I do want to make the note that with regard to Wilson and the timing of notice, statute was amended after Wilson was decided, and Congress took out the introductory phrase upon the receipt of a complete and substantial application. So it doesn't undermine the holding in Wilson because it still relates to when a claim is presented, but it certainly, I think, undermines the Veterans Court's focus on it has to come right at the beginning, and our contention is it has to come whenever it's required and it has to be satisfactory, which brings me to the next point. There were absolutely no mention of exceptional repugnance or any failure to show exceptional repugnance in any of the other rating decisions or statements of the case. So in terms of other protections, as mentioned in Wilson, Mr. Russell got no notice from those protections. With regard to Your Honors' question about the Buczynski standard, and I'm not aware, Your Honors, of anybody having challenged Buczynski, at least appealed it or challenged its ruling, I would say this, that if generic notice does not have to address a problem like this, does not have to say, well, you've got this strange wording, very subjective, the kind of wording, by the way, that the Veterans Court sent back when it was definite impairment. The Veterans Court sent that back in Hood v. Brown and said, this is going to be difficult to apply. You've got to explain what you mean. Didn't do that here, but it's the same kind of term. If the generic notice doesn't have to address what you actually have to show that gives the veteran a real chance of knowing that he should go get testimonials from coworkers that show extreme dislike reversion, as the Veterans Court would have it, in its articulated standard, then I think the standard is unworkable and maybe it does need to be an objective standard. I want to put out finally that the Veterans Administration is capable of doing exactly what the veteran wanted here. It uses the term incapacitating episodes in a lot of diagnostic codes, the 6,000 series, among others. And each time, and I looked up incapacitating in the dictionary, and it says rendering someone unable to work, to move, to a broad range of things that it could mean, ranging from merely disabled to completely prostrate. And the Veterans Administration gives a note in the regulation that says, for these purposes, incapacitating means bed rest has to have been prescribed by a physician and you have to be undergoing some treatment from a physician. That's the kind of thing that the veteran was looking for here and never got from the VA. Thank you, Mr. Belkin. And it's all right. The case is taken under submission.